700 So.2d 1152 (1997)
Peter DUHON
v.
HOLI TEMPORARY SERVICES, INC.
No. 97-CA-0604.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
*1153 Michael W. Whitehead, Leigh Ann Schell, Trinchard & Trinchard, New Orleans, for Appellant.
John H. Ryan, Gordon P. Serou, Ryan & Serou, New Orleans, for Appellee.
Before KLEES, BYRNES and PLOTKIN, JJ.
BYRNES, Judge.
The defendant-appellant, Holi Temporary Services, Inc. appeals that portion of a judgment of the Office of Workers' Compensation Administration awarding Supplemental Earnings Benefits to the claimant, Peter Duhon. We reverse that portion of the judgment.
Holi does not contest the fact that the plaintiff sustained a work related injury on September 16, 1994. Duhon stepped in a hole in a platform on which he was working, wrenching his leg and body. Holi paid Duhon worker's compensation benefits from the date of the accident until June 10, 1996. The trial court awarded plaintiff Supplemental Earnings benefits from that date.
Dr. Mimeles first treated plaintiff on October 11, 1994. At that time Dr. Mimeles ordered an MRI which was normal. Dr. Mimeles next saw plaintiff on November 1, 1994, when he released claimant to "full work" duty. The hearing officer noted these facts in her findings.
Although not specifically alluded to in the hearing officer's findings, Dr. Mimeles also found "no structural or mechanical damage" and "nothing else to support this gentleman's [Duhon's] continued subjective complaints of pain." Dr. Mimeles concluded his examination of November 1, 1994 by discharging the claimant based on his opinion that whatever strain or sprain Duhon may have experienced as a result of his accident would resolve itself in the ensuing next few weeks without further treatment.
On March 8, 1995, claimant began treatment with Dr. Friedman, a neurologist. Claimant saw Dr. Friedman eight more times through May 10, 1996. At no time did Dr. Friedmann restrict claimant from work. The hearing officer noted this fact in her reasons for judgment. The hearing officer also noted that the claimant received physical therapy from April 2, 1995 through June 2, 1995.
The court appointed Dr. James Butler, an orthopedic surgeon, to perform an independent medical examination on the claimant. Dr. Butler could find no objective evidence to support claimant's subjective complaints of pain. The hearing officer noted that Dr. Butler did not find the claimant unable to work.
At the time of trial on October 16, 1996 the claimant was 47 years old and had completed his education as far as the first year of college. The claimant has not worked since the date of the accident, and admits to having made no attempt to look for work.
In her reasons for judgment the hearing officer states:
Defendant asserts that claimant has never presented any medicals which indicate that claimant could not perform his job duties. Nonetheless, defendant paid for medical treatment and indemnity benefits to claimant until June 10, 1996.
The hearing officer implies that the payment of claims by Holi is, in itself, an admission of liability, and, indeed, the result reached by the hearing officer supports the conclusion that she was influenced by the impermissible inference of liability she drew from the payment of benefits by Holi. As a matter of public policy the voluntary payment of worker's compensation benefits is encouraged. If the payment of such benefits were to be considered to be evidence of liability, it would discourage such voluntary payment. Moreover, the initial payment of benefits when a work related injury has incontestably occurred can in no way be considered as evidence of an admission by the employer that the injured employee is still unable to work almost two years after the date of the accident.
*1154 The hearing officer further states in her reasons for judgment that:
However, there is no evidence offered by defendant that points to claimant's ability to work. No FCE was performed, no labor market survey was performed, no return to work offer by defendant to claimant.
The entire case rests on subjective complaints of pain by claimant and his statement that he can not work due to pain. Defendant has not contradicted claimant's statement that he can not work due to pain.
This Office of Worker's Compensation Court further finds that, although defendant paid for physical therapy, defendant did nothing further in terms of vocational rehabilitation to help claimant return to gainful employment.
This Office of Worker's Compensation court finds that once claimant claimed that he could not work due to pain, the burden shifted to defendant to perform vocational rehabilitation as outlined in the Act. This defendant failed to do. Defendant could not rely on Dr. Mimeles' return to work in 1994 for a termination of benefits in 1996. If defendant had presented claimant with job possibilities, claimant would have had a duty to attempt to perform these jobs. However, defendant did not do so. [Emphasis added.]
This shows a failure of the hearing officer to appreciate claimant's burden of proof. The burden is not on Holi to offer evidence of the claimant's ability to work. The burden is not on Holi to perform an FCE or a labor market survey for evidentiary purposes until the burden shifts. The burden is not on Holi to show that it made a job offer to claimant until the burden shifts. The burden is on the claimant to first show that he is unable to earn at least 90% of his pre-injury wages. Rapp v. City of New Orleans, 95-1538 (La.App. 4 Cir. 9/18/96); 681 So.2d 433, writ denied, 96-2925 (La.1/24/97); 686 So.2d 868; Smith v. Hamp Enterprises, Inc., 95-2343 (La.App. 4 Cir. 4/17/96); 673 So.2d 267; Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4 Cir.1993); Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 p. 8 (La.7/1/97); 696 So.2d 551, 556. Only after the claimant has discharged this burden of initially presenting a prima facie case of his inability to earn at least 90% of his pre-injury wages does the burden shift to the employer to show that the claimant is able to perform a job available in his or his employer's community or reasonable geographic region. Banks, supra.
The facts in the instant case are very different from those in Banks. In Banks, 696 So.2d at p. 556, the court noted that:
It is undisputed, in the instant case, that Banks is unable to return to his pre-injury employment as a roofer's helper. It is also undisputed that Banks has been assigned a 23% upper extremity disability rating and a 14% total body disability rating. The hearing officer found that Banks had carried his burden of proving a prima facie case of entitlement to SEBs. Industrial did not contest that determination in the court of appeal and does not contest that determination in this Court.

Thus in Banks, as distinguished from the instant case, there was no question of when or whether the burden of proof had shifted from the claimant to the defendant. Banks commenced with the undisputed premise that the burden had shifted. The question in Banks was what is the nature of the employer's burden once the burden shifts to the employer.
The hearing officer found that the claimant was earning $145.00 per week. This finding is not contested by either party on this appeal. 90% of that amount is only $130.50 per week. Virtually any minimum wage job could be expected to pay that much. Therefore, claimant would have to show that he was unable to perform virtually any kind of work, i.e., that he was for all practical purposes completely and totally disabled. (For purposes of comparison we note that in Banks the claimant was earning $220.69 per week, 90% of which is $198.62, or approximately one-third more than Duhon was making prior to his injury. Moreover, Banks did not have as much education as Duhon and had no prior employment experience in sedentary fields.)
*1155 Claimant testified that he had had menial labor jobs most of his life. He had worked as a painter's assistant, a painter, a floor sweeper, and also as a driving instructor for Victor Manning. At the time he was injured his job was unloading 55-gallon drums.
Claimant testified that Dr. Friedman prescribed Excetric (sic) Plus, which we assume is Excedrin Plus. He also takes Advil. Claimant's testimony indicates that his subjective belief is that he is not capable of manual labor because of his pain. Even if we consider the claimant to be as disabled as he subjectively believes himself to be by accepting his uncorroborated testimony at face value the record compels the conclusion that at the very worst claimant is still capable of doing sedentary work. Claimant testified that he occupies most of his time reading. From this we must conclude that claimant's pain has not affected his ability to concentrate and reason.
Claimant testified that he was able to sit and "lay on my side." By his own admission, therefore, claimant may be capable of sedentary employment. Claimant does not claim to be injured in such a way that he cannot sit comfortably. We may assume that his past employment as a driving instructor was sedentary in nature. In other words, although claimant made the sweeping conclusory statement that he could do no work, the things he testified he could do were sufficient to enable him to do sedentary work. Claimant has completed high school and one year of college. As this Court stated in Rapp, supra, 681 So.2d at 438: "It is not enough just to prove the inability to continue in the pre-injury job.... To do otherwise would provide a claimant with a strong incentive to remain unnecessarily unemployed."
Moreover, claimant is not entitled, in the absence of any evidence, to a presumption that no sedentary work of any kind exists in this geographic region for one of his level of education and experience. (As pointed out earlier 90% of claimant's pre-injury compensation being only $130.50 per week. Virtually any job could be expected to pay that much.) Claimant failed to explain why he could not go back to his previous occupation of driving instructor. He made no attempt to do so, or to find any other kind of work. Even if we view the record in the light most favorable to the claimant, he has failed to show that there is no available employment within the scope of his physical and educational limitations.
Although a court may consider a claimant's uncorroborated testimony of subjective pain, if credible, concerning the nature of what his physical or mental limitations might be as the result of pain, the decision of the court should be based on those limitations, not on the claimant's self-service testimony on the ultimate issue of whether or not he can work. To adopt the approach taken by the hearing officer in this case is almost equivalent to ruling in favor of a litigant merely because he claims he is entitled to a settlement in the case without requiring him to prove why he is entitled to recovery.
We are reminded in Banks of "the jurisprudential tenet that worker's compensation is to be liberally construed in favor of coverage,"[1] but we are also bound by LSA-R.S. 23:1221(3)(c)(ii) which provides that the burden on claimant is not a mere preponderance of the evidence, but one of "clear and convincing evidence" where the disability is "solely as a consequence of substantial pain." The legislature obviously recognized the potential for abuse in this area when it enacted this heightened standard of proof.
Additionally, to the extent that the hearing officer's decision to award SEB was based on the failure of Holi to provide vocational rehabilitation services it was erroneous. Palisi v. City of New Orleans Fire Department, 95-1455, p.28 (La.App. 4 Cir. 3/12/97); 690 So.2d 1018, writ denied, 97-0953 (La.6/20/97); 695 So.2d 1352 and 97-1293 (La.6/20/97); 695 So.2d 1363. Likewise, to the extent that the decision of the hearing officer to award SEB was based on the failure of Holi to have a Functional Capacity Evaluation performed on the claimant to determine his work ability, it was in error. Holi would only have occasion to produce *1156 such an evaluation in order to refute claimant's case after, and only after, claimant had successfully proven a prima facie case initially. Where the claimant has failed to prove his prima facie case there is no need for Holi to present any case at all.
Holi briefed, argues and assigned as error only the issue of the trial court's award of SEB. Therefore, we consider that Holi has abandoned all objection to the balance of the judgment of the hearing officer.
For the foregoing reasons that portion of the judgment below awarding Peter Duhon Supplemental Earnings Benefits is reversed. The balance of the judgment is affirmed.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Banks, 696 So.2d at p. 556.