LWHIPPLE, J.
Claimant, Janet Q. Tyler, appeals the judgment of the Office of Workers’ Compensation (OWC) denying her claim for workers’ compensation benefits and dismissing her claim with prejudice and at her costs based on the finding that: (1) she failed to prove by a preponderance of the evidence that she was involved in an accident arising in the course and scope of her employment with the defendant, Nifty Fifties Café; (2) she failed to prove that she had any disability from August of 2002 or any disability that resulted in an inability to earn 90% of her pre-injury wages at any time; and (3) she violated LSA-R.S. 23:1208 and, therefore, forfeited her rights to workers’ compensation benefits. The sole issue presented for review is whether the OWC erred in its factual finding that claimant did not sustain injuries resulting from a work-related accident. Specifically, the claimant contends that OWC “erred manifestly when it ruled in favor of defendants and against plaintiff, denying that [the claimant] had a work related [sic] accident basing [the] decision on allegations and not on any concrete or medical records.”
After a thorough review of the record, we find that the OWC’s sound and well-written reasons for judgment, which we adopt and attach hereto as Appendix “A,” citing Resweber v. Haroil Construction Company, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7 (recently affirmed by St. Bernard Parish Police Jury v. Duplessis, 2002-0632 (La.12/4/02), 831 So.2d 955), adequately explain the decision. Further, we find the record properly supports the fact-finder’s determination; and, we are unable to say the fact-finder was manifestly erroneous or clearly wrong. As this issue involves no more than an application of *506 well-settled rules to a recurring fact situation, we affirm the July 11, 2003 judgment of the OWC in accordance with Uniform Rules — Courts of Appeal, | ¡¡Rule 2-16.2A(4), (5), (6), (7), and (8). Costs of this appeal are assessed against claimant, Janet Q. Tyler.
AFFIRMED.
I ¿APPENDIX “A”
JANET Q. TYLER
VERSUS
NIFTY FIFTIES CAF021E
DOCKET NUMBER 02-05860
OFFICE OF WORKERS’ COMPENSATION
DISTRICT 9, HOUMA
STATE OF LOUISIANA
WRITTEN REASONS FOR JUDGMENT
STATEMENT OF THE CLAIM
The claimant, Janet Q. Tyler, alleges she was injured while in the course of and arising out of her employment with defendant, Nifty Fifties Café, as a kitchen worker on June 16, 2002. The accident allegedly occurred when she was lifting a glass rack and felt the pain in her back and leg. This was something she did many times every night during the course of her employment with defendant in the approximately two months she had worked there. As a result the claimant alleges she suffered a back injury and is entitled to medical and weekly indemnity benefits under the Louisiana Workers’ Compensation Act.
The defendant alleges the claimant has violated LSA-R.S. 23:1208.
FINDINGS OF FACT
■*" The claimant was employed by defendant as a kitchen worker on June 16, 2002 and had been employed by defendant for less than two months.
The claimant had not worked for several years prior to going to work for defendant.
3. The claimant claims she was injured while making a twisting motion holding a rack of glasses, something that she did many times on each night of her employment.
4 The claimant questioned a co-worker, Jennifer Chatman, about the company drug policy in regard to her accident and told Ms. Chatman that she had smoked herb.
5. The claimant told Ms. Chatman that she would get whatever she wanted if Ms. Chatman would give a statement in the claimant’s favor about the accident.
6. The claimant was seen at Chabert Medical Center on June 17, 2002 complaining of back pain from twisting her back at work. No objective findings are noted in the records and claimant was diagnosed with a lumbar muscle strain.
The claimant was also seen at Chabert Medical Center on June 29, 2002. Again, no objective signs of injury were noted. The claimant complained of back and flank pain, but no leg pain.
—Lfi?‘ The claimant claimed she injured her low back and leg in the accident of June 16, 2002 and felt this pain immediately. No leg pain was ever reported to the doctors at Chabert Medical Center.
The claimant was seen by the Family Doctor Clinic on July 10, 2002 and complained of burning sensation across her lower back. There was no com *507 plaint of leg pain. There was also no objective finding of injury.
10. The claimant was seen by Dr. Bruce Guidry at the Family Doctor Clinic on August 2, 2002 at which time she was reporting getting better. There were no complaints of leg pain and the doctor specifically noted no objective findings.
11. On August 8, 2002, the claimant complained to Dr. Guidry for the first time that she had pain in to her leg and foot. Dr. Guidry noted that there were no objective findings on that visit. At this time the claimant was referred for an MRI and to Dr. William Kinnard, orthopedic surgeon.
12. The claimant was rear ended by an eighteen wheeler on September 18, 2002.
13. The claimant testified that she suffered no back injury in that accident despite the fact that she was hit hard enough to injure her neck and arms and the records from Chabert Medical Center indicate she was complaining of back and leg pain. She also testified that she did not report any back or leg pain to the doctors at Chabert Medical Center on that date.
14. The claimant was next seen by Dr. Kinnard on December 5, 2002. Dr. Kinnard’s records indicate no objective symptoms. He recommended only conservative options. He stated, “I see no evidence to suggest significant pathology.” Dr. Kinnard did not place any restrictions on the claimant. Dr. Kinnard’s records did not indicate that an MRI was necessary.
15. The claimant was also being treated by Dr. Michael LaSalle for neck and arm pain as a result of the motor vehicle accident of September 18, 2002. The claimant was undergoing physical therapy as a result of the injuries suffered in that accident. The claimant testified that she was treated through March of 2003 for those injuries.
16. The claimant testified she had gallbladder surgery in 2003. The eondi1tion and medical treatment was not disclosed to the defendant in discovery.
17. The claimant had a prior accident in which she suffered an injury to her low back.
18. The claimant received treatment for this prior injury to her low back on January 31, 2000 at the Oktibbeha County Hospital in Starkville, Mississippi. The claimant reported to the hospital that she suffered neck pain and low back pain as a result of that accident. The hospital’s diagnosis was musculo skeletal pain. An x-ray of the claimant’s low back was performed.
19.The claimant denied any prior injury or accident involving her low back and denied any medical treatment for her low back in discovery and at trial.
| «CONCLUSIONS OF LAW
A claimant in a workers’ compensation proceeding has the burden of proving by a preponderance of the evidence that a work related accident occurred and caused a specific injury. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992)
Accident has a specific meaning in a workers’ compensation context. . LSA-R.S. 23:1021(1) provides:
“Accident means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective find *508 ings of an injury which is more than simply a gradual deterioration or progressive degeneration.”
In this case, the defendant contends that the claimant failed in proving by a preponderance of the evidence that she had an accident while in the course of and arising out of her employment with defendant. The claimant contends that while twisting with a rack of glasses, something she admittedly has done on many occasions in her short time of employment with the defendant that she suffered pain to her back and leg. The defendant contends that this fails to establish a precipitous event.
A case on point is Stuart v. New City Diner, 758 So.2d 345 (La.App. 4th Cir. 2000). In Stuart, the claimant was a cafeteria line server who contended she was injured in an accident when she lifted a tray during her shift at the diner. In finding in favor of the defendant on the accident issue, the Fourth Circuit Court of Appeal stated:'
“In this Court’s judgment, the lifting of the tray in this case is not the type of traumatic event that fits the statutory definition of accident as amended in 1990. Furthermore, we know of no case, since the 1990 amendments to the statutory definition of accident, where a Court has held that such a routine motion as lifting a tray is an accident.”
This case is similar to the claims of the claimant in this case. Additionally, the definition of accident requires that the event directly produce objective findings of an injury, which is more than a degenerative progression. In this case, no doctor has ever noted any objective findings. The only thing documented from the claimant has been subjective complaints of pain.
Dr. Kinnard specifically noted in his report of December 5, 2002, “I see no evidence to suggest significant pathology.” Despite the complete lack of findings by all physicians, claimant contends she suffers constant pain in her back and legs. This is not credible.
The claimant did not prove any disability, at least past August 2002 when Dr. Guidry had the claimant on modified duty. A claimant has to prove a disability related to a work accident. Dr. Kinnard put no disability on the claimant.
In September 2002, the claimant was involved in a motor vehicle accident for which she had therapy and treatment through March of 2003 according to her testimony. The claimant did not |7prove that any disability she might have had was not caused by that accident as opposed to the alleged work accident.
Additionally, the claimant contends that she had gallbladder surgery some time in 2003. Her gallbladder condition may have disabled her. Certainly surgery would have disabled her for some period of time. She offered no medical records on this gallbladder surgery and gave the defendant no opportunity to do any discovery on this alleged condition. Her gallbladder condition was never disclosed to the defendant. The interrogatories addressed to the claimant, and which were admitted into evidence as a defense exhibit, specifically requested medical information such as this. Interrogatory No. 10 stated:
10. Please describe your medical history for the last ten years, including: a) the names of any physician or health care provider seen by you; b) any hospital or other health care institution you have been to; c) the treatment you received, the date you received the treatment, and the description of any condition that you were treated for; d) and any *509 medication provided. You should respond to this interrogatory particularly about any part of the body claimed in this proceeding to have been injured or for which you are suffering symptoms as a result of your injury. However, this interrogatory is not limited to such injuries or conditions.
This Interrogatory requested information which would have included a gallbladder condition. The claimant contended that she suffered from this gallbladder condition for a number of years trying to explain her prior back problems and complaints. This makes that information relevant to this litigation, but it was never disclosed to the defendant to give the defendant the opportunity to do discovery on the condition to get a complete medical picture. The defendant was unable to get a medical opinion of whether gallbladder problems could account for the claimant’s pre-existing complaints because it did not have this information. The defense was prejudiced by the failure to give full information in response to Interrogatories. The claimant did not prove she had any disability related to the alleged work accident.
In addition, Ms. Chatman and Mary Curtis, another co-worker, both testified that the claimant was complaining of back and leg pain the day before the alleged accident. This brings into doubt and questions the credibility of the claimant on her contentions that she had an accident on June 16, 2002, while in the course of and arising out of her employment with defendant. The claimant’s attempts to prove that this preexisting pain that she had was somehow related to her gallbladder condition. However, again, she gave the defendant no opportunity to do any discovery on this and get full disclosure and evidence on this issue. The claimant’s contentions that gallbladder was the cause of her preexisting problems were not supported by any evidence. There is no evidence to state what kind of pain a person with gallbladder problems would have and whether that pain would be similar to low back and leg-pain. The claimant said she had gallbladder surgery, but offered no medical evidence to establish this.
The claimant’s lack of credibility was demonstrated by this gallbladder testimony. On direct examination she attempted to explain the back and leg pain that she reported to her co-workers Ms. Chatman and Ms. Curtis by contending that this was menstrual cramps. She did not contend that | Sthis was gallbladder pain. She testified specifically that she had never hurt her back before. The gallbladder condition came up when the claimant was shown the Oktibbeha County Hospital records regarding a prior back injury. The x-rays of her low back showed some gall stones. Her story then changed from menstrual cramps to gallbladder problems. No mention of her gallbladder was made until then.
In order to recover supplemental earnings benefits, a claimant has the initial burden of proving by a preponderance of the evidence an inability to earn at least 90% of her pre-injury wage. Smith v. La. Dept. of Corrections, 633 So.2d 129 (La.1994); Duhon v. Holi Temporary Services, Inc., 700 So.2d 1152 (La.App. 4th Cir.1997) The burden does not shift to the defendant until the claimant meets this initial burden. The mere fact that a claimant is not working does not shift the burden to the defendant. Boutte v. Langston Companies, 707 So.2d 1315 (La.App. 3rd Cir.1998) If the claimant does not meet her initial burden, then the burden does not shift to the defendant. Rapp V.[v.] City of New Orleans, 681 So.2d 433 (La.App. 4th Cir.1996) *510 To do otherwise would provide a claimant with a strong incentive to remain unnecessarily unemployed.
In this case, the claimant has not shown that she cannot work in any capacity. She testified to very little effort to obtain employment. She stated she put in one written application and talked to other employers. She claims that when she disclosed her back problems, they told her they would refuse to hire her. She never identified any specific employers that she applied for. Her contention, in order to be believed, would have to have all of these employers violating state and federal law which prohibits questioning a person about any injury or disability before hiring. She was not interested in obtaining any employment.
The Fourth Circuit Court of Appeal in Duhon stated the following with regard to the plaintiffs burden of proof in a supplemental earnings benefits situation:
“The burden is not on the employer to offer evidence of a claimant’s ability to work. The burden is not on the employer to perform a functional capacity examination or a labor market survey for evidentiary purposes until the burden shifts. The burden is not on the employer to show that it made a job offer to claimant until the burden shifts. The burden is on the claimant to first show that he is unable to earn at least 90% of his pre-injury wages.”
The Duhon court stated that even if the claimant’s subjective complaints of pain were believed he failed to show that there was no employment available within the scope of his physical and educational abilities. Similarly, the claimant has failed to show that there was no work available within her abilities. She also failed to show that she had any current restrictions.
The claimant contends that she is entitled to a MRI in this case. Dr. Guidry recommended a MRI back in August of 2002. The claimant contends that Dr. Kin-nard also recommended a MRI. However, there is nothing in Dr. Kinnard’s report to indicate that she does need a MRI and he saw her much more recently than Dr. Gui-dry. In fact, Dr. Kinnard’s report indicates that he did not think that the claimant had any significant pathology and that he was only recommending conservative options. This does not prove the necessity of a MRI. There is nothing in Dr. Kin-nard’s certified medical records to indicate that he ordered a MRI.
|9The claimant has made misrepresentations in this case which result in a forfeiture of benefits under LSA-R.S. 23:1208. The Workers’ Compensation Act provides for a forfeiture of benefits when there are willful misrepresentations made for the purpose of obtaining benefits. In Resweber v. Haroil Construction Co., 660 So.2d 7 (La.1995), the court found Section 1208 to be clear and unambiguous.
“... Section 1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made willfully by a claimant for the purpose of obtaining benefits.”
Resweber was recently strongly reaffirmed by the Supreme Court in St. Bernard Parish Police Jury v. Duplessis, 831 So.2d 955 (La.2002). The Supreme Court found that any misrepresentation for the purpose of obtaining benefits results in a forfeiture of all benefits.
“The Louisiana legislature has made it clear: false statements that are willfully made for the purpose of obtaining workers’ compensation benefits constitutes an attempt to defraud the workers’ compensation system. Therefore, once it is determined that a claimant has willfully made a false statement for the purposes *511 of receiving any benefit or payment, the plain language of the statute mandates that the right to compensation benefits under the Workers’ Compensation Act are forfeited. Thus, the only remedy for a willful misrepresentation, made for the purpose of obtaining workers’ compensation benefits, is found within the Workers’ Compensation Act, and, therefore, cannot be abridged by this Court.”
In this case, the claimant willfully misrepresented the fact that she had a prior accident in which she injured her back. She did not disclose this accident, injury and medical treatment in discovery or on direct examination. The Oktibbeha County Hospital records show that the claimant reported a back injury to the doctors in the hospital on January 31, 2000. Her neck and back were x-rayed. She claimed at trial that she did not remember this incident. She went to an emergency room and was treated for a neck and back injury. She also underwent x-rays. This occurred just over two years prior to the alleged accident in this case.
The claimant contends that she sought no medical treatment after that and had no further problems. However, there is no way to verify this or to do further discovery for the defendant since the claimant failed to disclose this information in discovery. Claimant intends that she could not remember the accident and this treatment, but she can specifically remember not having any further treatment.
It is also difficult for the defendant to discover any information about this injury since it occurred in a different state. The claimant’s misrepresentations on this have prejudiced the defendant.
Additionally, the claimant reported to two co-workers of prior back pain. Both Ms. Chatman and Ms. Curtis were credible. Ms. Curtis is not even any longer an employee of the defendant. This is not consistent with the claimant’s contention that she had no prior back pain, injuries or treatment.
ImThe claimant denied on direct examination having any prior back pain, injuries or treatment. She denied in discovery to the defendant in her deposition and her Answers to Interrogatories that she had any prior back pain, injuries, or treatment. These misrepresentations have resulted in a forfeiture of benefits. Louisiana courts have indicated a zero tolerance for misrepresentations of this nature.
In Cole v. Drainage District No. 9, 750[760] So.2d 529 (La.App. 5th Cir.2000), the claimant injured his back in a work related accident. However, he had misrepresented a prior back injury from an automobile accident for which he had received treatment three prior to his work injury. As a result, the court found that benefits had been forfeited under Section 1208.
Another similar case is Dukes v. Sherwood Acres Apartments, 835 So.2d 742 (La.App. 1st Cir.2002) the claimant made misrepresentations regarding prior injury and treatment. As a result, the claimant was found to have forfeited benefits under Section 1208.
The claimant made other misrepresentations in this case. She made misrepresentations with regard to her gallbladder condition. At trial, she attempted to explain prior complaints of back and leg pain because of a preexisting gallbladder condition. However, this condition was never disclosed to defendants. In her responses to Interrogatories, she did not disclose such a condition despite a specific request. No medical evidence of any treatment for gallbladder problems or back pain resulted to gallbladder problems was introduced.
*512 The claimant also denied telling any coworkers about prior back pain and leg pain. This was refuted by Ms. Chatman and Ms. Curtis. Ms. Chatman also testified about the claimant’s questions about drug testing around the time of her alleged accident. This testimony was unre-butted.
Ms. Chatman also testified that the claimant promised her that she would not have to worry about anything if she gave a statement in favor of the claimant.
Finally, the claimant testified at trial that she has had back and leg pain since the alleged accident occurred on June 16, 2002. Following the accident the claimant went to Chabert Medical Center. While there is documentation of complaints of back pain, there is no documentation of any complaint of leg pain. The claimant testified at trial that she has had leg pain since the day of the accident.
There is no notation of any complaints of leg pain when the claimant saw Dr. Guidry through the visits of August 2, 2002. The first time she complained of leg pain to Dr. Guidry was August 8, 2002. This is nearly two months after the accident and contradicts the claimant’s contention that she had leg pain since the day of the accident.
This Court finds the claimant, Janet Q. Tyler, failed to prove by a preponderance of evidence that she was involved in an accident while in the course of and arising out of her employment with defendant, Nifty Fifties Café.
lnThis Court also finds the claimant failed to prove that she has any disability since August of 2002 or any disability which has resulted in an inability to earn 90% of her pre-injury wages at any time.
This Court also finds the claimant is not entitled to workers’ compensation benefits.
This Court also finds the claimant has violated LSA-R.S. 23:1208, and therefore, has forfeited her rights to workers’ compensation benefits.
This Court further finds that the workers’ compensation claim of Janet Q. Tyler is hereby dismissed with prejudice at her costs.
/s/ Glynn F. Voisin Glynn F. Voisin Judge, District 9, Southern Division Office of Workers’ Compensation 8026 Main Street, Suite 404 Houma, Louisiana 70360