| .CHEHARDY, Judge.
-In this workers’ compensation proceeding, the hearing officer granted defendant’s motion for involuntary dismissal at the close of the claimant’s case-in-chief at trial. For the following reasons, we vacate and remand.
At the June 16, 1999 trial, the parties stipulated that the claimant, Ike Brown, was involved in a work-related accident on October 30, 1997, while employed by defendant, Paducah Rigging, Inc. The parties also stipulated as to Mr. Brown’s average weekly wage, his compensation rate, and to the admissibility of fourteen exhibits, consisting of the medical records of the various doctors seen by Mr. Brown. The only contested issue at trial was whether Mr. Brown was entitled to workers’ compensation benefits after the company physician released him to return to work.
The only testimony at trial came from Mr. Brown, who testified that at the time of the accident, he was employed by Padu-cah as a truck driver delivering cargo, and that his duties included unloading the cargo, work he described as heavy manual labor. It was during one of his deliveries when he was unloading cargo that he fell from his truck, injuring his back. After the accident, he went to the West Jefferson Hospital Emergency Room, and was sent to Dr. Christy Montegut by Paducah.
During Mr. Brown’s initial visit with Dr. Montegut on November 3, 1997, Dr, Mon-tegut noted - “moderate spasm” in the left lumbar area, - diagnosed a lumbar and left gluteus contusion and mqscle strain, and issued two prescriptions for medication. Dr. | .-¡Montegut also released Mr. Brown to return to light duty that day and to “regular duties” on November 10, 1997. During Mr. Brown’s only other visit with Dr. Mon-tegut, on November 10, 1997, Dr. Monte-gut noted persistent symptoms, added a third prescription medication, yet released Mr. Brown to return to regular duties on November 17,1997.
Mr. Brown testified that after his two visits with Dr. Montegut, he was still in “substantial pain ... in the lower part of my back.” He further testified that he had pain' and numbness in his legs. Mr. Brown also testified that after a few months, he tried to go back to work in a light duty capacity, “basically sweeping the warehouse.” Mr. Brown testified that he could only work for a short period of time on four consecutive days before he had to go home because the pain was too great. Mr. Brown also testified that he has been unable to work since that time.
Mr. Brown testified that after being examined and treated by other physicians *81 and receiving an epidural steroid injection, with no relief of his pain, he was referred to Dr. Kenneth Vogel, a neurosurgeon. After examining Mr. Brown and reviewing the various diagnostic tests performed on him, Dr. Vogel diagnosed a herniated lumbar disc and lumbar degenerative disc disease, which he found to be “causally related to the accident of 10/30/97.” On two different examinations, Dr. Vogel noted “a moderate degree” and “a severe degree of muscle spasm bilaterally.” Dr. Vogel has also found Mr. Brown to be disabled from his normal duties. Because of the positive neurological findings and the lack of progress from conservative treatment, Dr. Vo-gel recommended surgery.
Interestingly, while Paducah alleges that Mr. Brown has not been entitled to workers’ compensation benefits since November of 1997 (approximately two weeks after his accident), Paducah has approved the lumbar fusion surgery as recommended by Dr. Vogel. This was apparently due to the report of Dr. Gustavo A. Gutnisky, a neurosurgeon appointed by the hearing officer to examine Mr. Brown, review his medical records and give an independent opinion of Mr. Brown’s medical condition. Dr. Gutni-sky could not dispute that Mr. Brown was a candidate for this surgery.
I/The cross-examination of Mr. Brown at trial was uneventful, and his credibility as to his continued, disabling pain was not impeached. Additionally, on direct examination, Mr. Brown testified that he has had no prior back problems, has filed no prior claims or lawsuits, and has suffered no subsequent accidents or injuries.
After redirect examination of Mr. Brown, and having the fourteen exhibits admitted into evidence without objection, counsel for the claimant rested. The defense moved for an involuntary dismissal, which was granted by the hearing officer, who stated: “I’m going to grant the motion. I have read the medical reports, I have heard the testimony of the witness, and I find that the clear and convincing burden has not been met and therefore I am going to order the claim dismissed with prejudice.”
On June 22, 1999, the claimant filed a motion for new trial and a request for reasons for judgment, which were denied by the hearing officer on June 23, 1999. The hearing officer then signed a written judgment submitted by the defense on June 25, 1999, dismissing the claimant’s claims with prejudice. The claimant has appealed, asserting three assignments of error. Because we find the hearing officer erred in granting the involuntary dismissal, we need not address each of the claimant’s assignments.
Temporary total disability benefits terminate when the patient has reached the point of maximum medical improvement and continued regular treatment by a physician is not required. La. R.S. 23:1221(l)(d). Any entitlement to such benefits requires the employee to show by clear and convincing evidence, unaided by any presumption of disability, that the claimant is physically unable to engage in any employment. La. R.S. 23:1221(l)(c). Gilley v. Reeves Deli Mart, 30,355 (La.App. 2 Cir.4/08/98), 711 So.2d 328, 329.
Upon review, we note that defendant admits paying Mr. Brown temporary total disability benefits for a two-week period after the work-related accident. We find it suspect that while defendant claims that Mr. Brown has reached maximum medical improvement and that continued regular treatment is not required, defendant freely admits that it has approved Mr. Brown’s surgery, which was recommended as a result of his work-related accident.
1 ^Regarding involuntary dismissals, La. C.C.P. Art. 1672 B provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown *82 no right to relief. The court .may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In this matter, at the close of his casein-chief, Mr. Brown had clearly shown, through his testimony and the admitted medical records, a right to relief (i.e., that he suffered a compensable, work-related injury and that Paducah was his employer at the time of this injury). This is not to say that Mr. Brown had proven that he is entitled to relief, or had proven the type of relief to which he is entitled (i.e., temporary total disability benefits, supplemental earnings benefits, etc.). Such determinations can only be made after a full trial on the merits, and after due consideration is given to all of the testimony and documentary evidence admitted at trial.
As noted above, Mr. Brown’s sworn testimony at trial that he could not work was unwavering. Nowhere in the record is Mr. Brown’s credibility questioned by the hearing officer. Further, the various diagnostic tests performed on Mr. Brown and admitted into evidence (including an MRI, a lumbar myelogram and CT scan) show objective findings of injury which his treating physician opined are causing his pain, are disabling him from work and have necessitated surgery.
While a hearing officer’s ruling on a motion for involuntary dismissal should not be disturbed absent manifest error[1], an involuntary dismissal is not a substitute for a full trial on the merits, particularly in a case such as this, where a thorough review of the admitted medical records is required, and where questions remain as to whether Mr. Brown is entitled to supplemental earnings benefits[2] and to any workers’ compensation benefits during his | ^recovery period from the surgery authorized by Paducah. .For these reasons, the involuntary dismissal granted by the hearing officer was not proper, and was manifestly erroneous. Accordingly, the involuntary dismissal is vacated.
On remand, since Mr. Brown testified that he was offered light-duty work by Paducah, the hearing officer should address, inter alia, whether Mr. Brown is entitled to supplemental earnings benefits since the accident. Additionally, since Pa-ducah has approved Mr. Brown’s surgery, the hearing officer should determine whether Mr. Brown is entitled to any workers’ compensation benefits during his recovery period from the authorized surgery.
For the foregoing reasons, the judgment of the hearing officer, granting defendant’s motion for involuntary dismissal and dismissing the claimant’s case with prejudice is vacated. This matter is remanded to the Office of Workers’ Compensation for further proceedings consistent with this opinion.
VACATED AND REMANDED.

. Trench v. Harmony Construction Co., 95-1851 (La.App. 1 Cir.4/4/96), 672 So.2d 330, 333, writ denied, 96-1130 (La.6/7/96), 674 So.2d 973 (citations omitted).

. As noted above, Mr. Brown testified at trial that he was offered light-duty work by Padu-cah after the accident.